## Kane *against* Fisher.

If an action of covenant be brought upon an article of agreement for the sale of land, to recover a part of the purchase money due when the suit was brought, and the defendant sets up as a defence defect of title, because of incumbrances ; he cannot, in a subsequent action for the residue of the purchase money, set up the same matters of defence.

In an action of covenant to recover purchase money payable in instalments, brought before all the instalments were due, the plaintiff in his declaration claimed as well those which were due as those which were not due; and the jury found for the plaintiff a certain sum " due to the plaintiff at the institution of the suit." Held, that this recovery was not a bar to a subsequent action to recover the instalment not due at the institution of that suit.

A vendor of land is not liable to reimburse a vendee the expenses of defending against an ejectment in which the plaintiff failed to establish his title.

In an action by the assignees of an insolvent debtor, it cannot be objected to their recovery that they have not shown that they are assignees ; unless that fact be put in issue by a special plea.

Circumstances which will avoid a presumption of payment from lapse of time.

APPEAL from the circuit court of *Dauphin* county.

This action was tried before the Chief Justice at a circuit court lately holden for the county of Dauphin, where a verdict was given against the defendant : upon which he moved for a new trial ; the motion, however was overruled, and judgment entered upon the verdict. From the decision of the circuit court upon his motion for a new trial, the defendant appealed.

The action is in covenant, and founded upon articles of agreement under seal between John Kane, the assignor of the plaintiffs of the one part, and George Fisher, the appellant, of the other part; bearing date the 4th day of December 1804. By which John Kane, the assignor of the plaintiffs, covenanted, that he would, on or before the 1st day of April then next ensuing, grant, bargain, sell, assure and confirm unto the said George Fisher, his heirs and assigns, in fee simple, all that tract of land situate in the township of lower Paxton, county of Dauphin and state of Pennsylvania, bounded and described, &c., and that he would immediately deliver the possession thereof to the said ·George Fisher. In consideration whereof, the said George Fisher did thereby covenant and agree to and with the said John Kane, that he would well and truly pay unto the said John Kane 36 dollars for each and every acre that might be contained in the said tract of land, on actual measurement thereof being made, to be paid in the following manner : 1000 dollars in hand ; one other 1000 dollars on the 1st day of April next ensuing the date thereof, when the deed of conveyance was to be delivered to the said George Fisher ; and the residue of the consideration money in

[Kane v. Fisher.]

four equal annual payments—the first to be paid on the 1st day of April 1806, and so on yearly, and every year thereafter, until the whole of the said consideration money should be fully paid and discharged. The last of these four annual instalments, which, according to a subsequent measurement of the land, amounted to 587 dollars 82 cents, became payable on the 1st of April 1809; and it is for the recovery of this, that this action was instituted in the common pleas of Dauphin county, to November term 1830, and removed into the circuit court afterwards for trial.

The land mentioned as the subject of sale in the articles of agreement, was a part of the real estate of John Hamilton, the father-in-law of John Kane, who had died intestate, leaving a widow and several children, of whom John Kane's wife was one. After the articles of agreement were entered into, a proceeding was had in the orphan's court of Dauphin county, whereby a tract of land, of which the land mentioned in the articles of agreement formed but a part, was decreed by the said court to John Kane, in right of his wife, as one of the heirs at law of the said John Hamilton, at an appraisement thereof made, amounting to 11,160 pounds. John Kane procured releases and acquittances from all the other heirs of John Hamilton, who were of full age, and from the guardians of those under age; but never obtained a release or an extinguishment of the widow's claim to the interest upon one-third of the appraisement money, which was charged upon the land. He, however, joined with John Foster and John Elder, as his sureties in executing a bond to George Fisher, conditioned to keep George Fisher indemnified against the widow's claim to her interest; and also executed a deed of conveyance jointly with his wife, for the land described in the articles of agreement to George Fisher. The deed was acknowledged by Kane and his wife before a justice of the peace, but the certificate given by the justice of the acknowledgement was defective. Mr Fisher paid the first 1000 dollars of the purchase money, and got possession of the land immediately upon the execution of the articles of agreement, which he has kept ever since. On the 13th of April 1805, George Fisher also paid to John Kane 800 dollars of the second 1000 dollars, when it was agreed between them by an indorsement made to that effect on the back of the articles of agreement in writing, that the payment of the balance of the second 1000 dollars and the making of the deed of conveyance should be deferred to the 15th day of August then next following. Afterwards, on the 27th of October 1807, no more of the purchase money having been paid by Mr Fisher, John Kane tendered to him the deed of conveyance, the releases and the bond of indemnity already mentioned, which Mr Fisher, after reading, said were right, but that he had not the money then to pay him. He however said he would pay it in the spring following, and returned the papers to Mr Kane; who placed them in the hands of a Mr Laird, then a gentleman of the bar of Harrisburg, and the counsel and attorney of Mr Kane. Mr

[Kane v. Fisher.]

Fisher, at some subsequent period, got these papers from Mr Laird for inspection, as it is said ; and about 1812, upon the written order of John Kane, gave up the bond of indemnity to John Foster, one of the obligors named in it, who thereupon destroyed it.

Afterwards, on the 4th of January 1825, Mr Fisher gave a mortgage to Jacob Ridgway to secure the repayment of a large sum of money to him, upon the same land embraced in the deed of conveyance from John Kane and his wife to him, in which mortgage the deed of conveyance is recited as the link in the chain of title to the land connecting it with the mortgagor. About this time, the deed of conveyance from Kane to Fisher was put on record ; by whom does not appear ; it is said it was done by Mr Ridgway, the mortgagee. Long before this, however, an amicable action in covenant upon the articles of agreement was entered in the court of common pleas of Dauphin county, of December term 1808, in which John Kane was plaintiff· and George Fisher was made defendant. A statement of the plaintiff's claim was first filed for the balance only of the second 1000 dollar instalment, and the three first of the four following annual instalments ; but afterwards, on the 28th of January 1829, the action being still pending, a declaration by leave of the court was filed by the plaintiff's attorney, in which, after reciting and setting out the articles of agreement at length, and a subsequent agreement between the parties whereby the payment of a part of the second 1000 dollar instalment and the making of the deed of conveyance had been postponed for some time, it is assigned for breaches of the agreement, that "the said George Fisher did not pay to the said John Kane the said sum of 1000 dollars on the 1st day of April 1805, nor at any subsequent time according to a post-modification of the said articles of agreement, as in the declaration previously set forth ; and that the said George Fisher did not pay to the said John Kane the *residue* of the said consideration money *in four equal yearly payments ;* the first to be made on the 1st day of April 1806, and so on yearly, and every year, until the said consideration money was fully paid ; viz. 587 dollars 82 cents on the 1st day of April 1806, the further sum of 587 dollars 82 cents on the 1st day of April 1807, the further sum of 587 dollars 82 cents on the 1st day of April 1808, and the further sum *of 587 dollars* 82 *cents on the* 1*st day of April* 1809." John Kane, during the pendency of this action, took the benefit of the insolvent acts, and and assigned all his effects and estate for the benefit of his creditors, after which he died.

On the 19th of July 1828, his death was suggested on the record, and his widow, Jane Kane, who had become his administratrix with his will annexed, substituted herself. Previously to this, however, about the year 1824, Jane Kane, after the death of her husband, brought an action of ejectment against George Fisher for the land sold to him by her husband, claiming the whole of it as heir at law of her father, John Hamilton. In which action, upon trial thereof, a special verdict was given ; whereupon the court rendered

a judgment in her favour for an undivided seventh part of the land; but this judgment was reversed afterwards by the supreme court, and a *venire facias de novo* awarded. Upon a second trial of the cause in March 1830, a verdict and judgment were given for George Fisher, the defendant. Then at a special court of common pleas, holden by the honourable John Reed, president judge of an adjoining district, and the associate judges of the court of common pleas of Dauphin county, at Harrisburg, in and for said county, on the 20th of July 1830, the trial of the amicable action in covenant was entered on by a jury called and sworn for that purpose, under the direction of the court, which continued until the 23d day of the same month, when the jury gave a verdict for the plaintiff in the following words, viz. "We find the sum of 1875 dollars 60 cents, due to the plaintiff *at the institution of this suit,* including interest to this day, after deducting 1401 dollars 67 cents as principal of a dower, and interest on the same since the 1st day of April 1813 to the present time: the said dower of 1401 dollars 67 cents to remain in the hands of the defendant, George Fisher, during the natural life of the late John Hamilton's widow, now widow Mitchell; and at her death, or upon the release of it, to be paid over to the plaintiff, the payment of which to be secured by remaining a lien on the land: damages with six cents costs." Upon this verdict, after overruling a motion for a new trial made by the defendant, the court rendered a judgment of *quod recuperat* as to the 1875 dollars 60 cents and costs of suit: which was afterwards affirmed by this court, to which it was removed by a writ of error sued out by the defendant. The judgment of the court given on the verdict of the jury was not considered, as operating on what they said as to the 1401 dollars 67 cents; because that was merely explanatory of the principles upon which they found a reduced sum for the plaintiff, and showing at the same time what they had deducted from the sum that otherwise would have been the plaintiff's due, had it not been for the incumbrance of the widow's claim, during her life, upon the land. The recovery thus had in this action, instituted as of December term 1808, was among other things pleaded and relied on as a bar to the action before us on appeal; and on the trial of the action so pleaded in bar, the defendant set up as a defence, the incumbrance of the widow Hamilton or Mitchell's claim upon the land; and gave in evidence all the matters relating thereto, in the same manner and to the same extent that he did on the trial of this second case—alleging, among other things, that he had never accepted of the deed of conveyance from John Kane in any way whatever; and in short produced and brought forward every thing to bear in his defence to that action, that he did on the trial of the latter with the exception of a former recovery, presumption of payment arising from lapse of time, and the claim of an allowance for moneys and expenses disbursed and incurred in defending against the claim of the widow of John Kane in the action

II.—GG

[Kane v. Fisher.]

of ejectment brought by her against the defendant which has been already mentioned.

The jury found a verdict for the plaintiff, which the defendant moved to set aside for the following reasons:

First. The court charged the jury, that if they believed that the defendant accepted the deed given by John Kane and Jane his wife to him, in evidence in the cause, they should find for the plaintiffs the amount of the debt and interest claimed by them; notwithstanding the estate thereby conveyed was incumbered by an outstanding estate in dower or thirds to the widow of the late John Hamilton deceased, from whom it descended to his heirs, and decreed by the orphan's court of Dauphin county to the said John Kane, subject to the payment of a much larger sum than the plaintiff's claim to the widow: which is error.

Second. The court charged the jury that he had some doubts as to the law on this point, inasmuch as a former jury had, in another cause between the same parties, appropriated 1406 dollars 67 cents out of the purchase money, as a fund to meet the incumbrance, to the widow, of more than double that amount, without the consent of the said defendant or the widow, but which doubts could be settled by the supreme court, on a motion for a new trial, and on an appeal. In this, it is believed, there is error, inasmuch as the court ought to have charged the jury that no such power existed without the consent of the defendant and the widow to apportion the dower or thirds between the purchasers of a tract of land on which it was in gross, and particularly so, as the part of the finding of the former jury was reversed in error by the supreme court.

Third. The court charged the jury that there might be doubts as to the operation of the plea of former recovery, but that they should find for the plaintiffs, and all could be corrected *in bank*, on an appeal to the supreme court: when the court, it is believed, should have charged, that, as the cause of action was the same in both suits, and nothing in the record to show that it was not submitted to the former jury, it was a bar to a recovery by the plaintiffs in this action.

Fourth. The court charged the jury that the defendant was not entitled to deduct his expenses and counsel fees from the plaintiff's claim, for defending the ejectment of Jane Kane against him for the lands in question given in evidence: this is error; a reasonable allowance, under all the circumstances, should have been made.

Fifth. By the terms of the articles of agreement, John Kane was to convey an estate in fee unincumbered; the court therefore, it is believed, should have charged the jury that while the estate was incumbered to a much larger amount, John Kane nor his representatives could not recover, particularly as John Kane died insolvent while the incumbrance remained.

Sixth. That as in this case the plaintiffs rely on a parol contract, the terms of which depend on the testimony of James Mont-

[Kane v. Fisher.]

gomery, Esq., it is believed that as the bond of indemnity mentioned in the testimony of himself and John Foster, Esq. was, in part, the foundation of this agreement, which was afterwards delivered up, on the order of the then plaintiff, John Kane, to Mr Foster, and by him destroyed, the contract was rescinded ; the plaintiff cannot therefore recover without completely indemnifying the defendant.

Seventh. The court, under the evidence in this cause, ought to have charged the jury that, as the plaintiffs did not show that they were the assignees of John Kane, they could not recover.

Eighth. That as more than twenty-one years had elapsed between the time the money sued for became due and the institution of the suit, this, in conjunction with the former recovery and the evidence in the cause, was a positive bar to the plaintiff's right to recover ; and so the court ought to have charged the jury.

Ninth. The verdict is against the law and the evidence in the cause.

The motion for a new trial was overruled, and the defendant appealed.

*J. A. Fisher*, for appellant. The acceptance of the deed of conveyance, even if the defendant did so, will not prevent him from availing himself of a defence to the amount of subsisting incumbrances. Hart *v.* Porter, 5 *Serg. & Rawle* 204; 2 *Chan. Cas.* 19; 3 *P. Wms.* 309 ; *Sug. Vend.* 210, 243 ; 4 *Bro. Chan. Rep.* 88. ·

The widow's dower is yet a subsisting incumbrance upon the land. It is no answer to this objection, that the amount of it was ascertained in the former trial, for the widow was not a party to that action, and is not bound by any thing which resulted from it. *Phil. Ev.* 227; 1 *Stark. Ev.* 190; Huber *v.* Burk, 11 *Serg. & Rawle* 246; Cassel *v.* Cook, 8 *Serg. & Rawle* 293.

The contract, with its modification, was set out as the plaintiff's cause of action; and a material part of it, which was for the benefit of the defendant, was, that he should have a bond of indemnity against incumbrances. This bond was withdrawn and destroyed, at the instance of the plaintiff; he will not, therefore, be permitted to derive a benefit from a contract, a part of which he has annulled. *Pow. on Con.* 417.

An issue upon the plea of a former recovery is determinable from the record. If it were not so, all the evidence given in the first trial, what the points made were, what the charge of the court, which is not always in writing, and upon what parts of that evidence the jury founded their verdict, would all be the subject of parol evidence in the second trial; this would be so inconvenient, and lead to so much uncertainty of conclusion, as to render necessary the adoption of the rule that the inquiry must be confined to the evidence contained on the record. If this record, therefore, exhibits the same claim which was once before made, insisted upon by the plaintiff and determined by a verdict and judgment, the plaintiff is concluded. 1 *Stark. Ev.* 199 ; Ritchter *v.* Campbell, 3 *Wils.*

304; 1 *Tidd. Prac.* 529, 688. If a plaintiff has several causes of action, which he may and does join, he may enter a *nolle prosequi* as to any one. 1 *Saund.* 207, *note* 2; Irvin *v.* Knox, 10 *Johns. Rep.* 365; Flatter *v.* Best, 11 *Johns. Rep.* 530; Warrington *v.* Paine, 15 *Johns. Rep.* 432; Brockway *v.* Kinney, 2 *Johns. Rep.* 210; Wheeler *v.* Van Houton, 12 *Johns. Rep.* 311. In the former suit the plaintiff had several causes of action, did join them, and took a verdict in judgment upon his declaration as it was.

*Alricks* and *M'Clure*, for appellees (whom the court requested to confine their argument to the question, Whether the former recovery was a bar to the present action).

In the former action, the defence might have been made upon the plea of payment, with leave, &c., and it would not have been necessary that any part of the evidence given should have been reduced to writing, or made part of the record : the jury might have defalked the whole amount of the incumbrance, and the record would not show why that defalcation was made. Hence the necessity of showing by parol, that the same defence was made, evidence given to sustain it, and that it was actually allowed by the jury. But in this case the record does show, that the cause of action in the present suit was not due when the former one was instituted, and the verdict (which is special) shows that it was not allowed by the jury. Miller *v.* Ralston, 1 *Serg. & Rawle* 309; Reed *v.* Collins, 5 *Serg. & Rawle* 351.

The opinion of the Court was delivered by

KENNEDY, J.—The first, second, fifth and sixth reasons relate exclusively to those matters which were all given in evidence, and made the ground of defence by the defendant, in the first action of covenant against him, instituted in 1808. They were not only all passed upon and decided in that action by the court and jury, but the defendant gained a very important advantage on account of them. A deduction of upwards of 1400 dollars was made by the jury from the plaintiff's demand, and from what would otherwise have been clearly given him, as his due, by the jury, had not those things been set up by the defendant as a defence. He having got all that the jury thought he had a right to claim, under the particular circumstances of the case, must be considered as having obtained a complete compensation for and on account of the incumbrance upon the land, and defect of title on the part of Kane, as well as any other delinquency in not having fulfilled and performed punctually all and singular those things contained in the articles of agreement upon his part to be performed. Then is it reasonable that the defendant should be permitted to avail himself of the same defence a second time, and to obtain compensation again for the same injury? Surely not. It is totally immaterial, where an incumbrance exists upon real estate at the time of the sale thereof,

whether the vendee of it obtains compensation for, or indemnity against it, as plaintiff, in an action brought by him against the vendor for that purpose, or in an action brought against him by the vendor for the purchase money, by setting it up as a defence, and obtaining an adequate deduction from the purchase money sought to be recovered from him, according to the estimate which the jury may think proper to make of it. And whatever result shall attend his attempt, either as a plaintiff or a defendant, to obtain compensation for such injury, he will be bound and concluded by it. He cannot have a second action for the same cause, nor yet make it the ground of a second defence in a subsequent action, after a recovery had against him in the first; nor can he, after having obtained reparation in either form, or even after having taken his chance for it, bring and sustain a suit for it, or make it the subject of a defence afterwards. And the effect in law would be precisely the same, after having submitted the matter to a jury once, whether he succeeded in obtaining any thing on account of it or not. He will be concluded by the decision until set aside or reversed; and as long as it remains in force and unreversed, it will be a good bar to any future attempt to recover reparation or indemnity for the same cause. All the authorities cited by the counsel for the defendant to support his plea of a former recovery, are full to this effect. I will, however, only refer to Curtis *v.* Groat, 6 *Johns. Rep.* 168; Jones *v.* Scriven, 8 *Johns. Rep.* 453.

The third reason is, that the Chief Justice misdirected the jury in advising them that the recovery of the plaintiff in the former action was no bar to the recovery of the plaintiffs in this case. It is certainly true that the instalment of the purchase money for which this action is brought, was likewise included in the plaintiff's declaration in the former action, and the non payment of it assigned as a breach, as well as all the preceding instalments, excepting the first, which was paid at the time of sealing and delivering the articles of agreement. But then it appears from the face of the record of the suit that it was not due or payable at the time the suit was instituted, and that the plaintiff, therefore, had no right to demand it in that action. I am not satisfied but that, in the absence of all testimony to the contrary, we ought to presume that this last instalment was excluded by the jury from their consideration, in making their verdict in the former action, as it was not payable at the time of instituting it. If a plaintiff, in an action for defamation, join words, in the same count of the declaration, which are not actionable, with those that are; and the jury give damages for a certain amount, generally in favour of the plaintiff, without saying for what words, and judgment of the court be rendered on the verdict: it will be presumed that the damages were given entirely on account of the actionable words; though it would be otherwise where they are set forth in different counts.

In Crouse *v.* Miller, 10 *Serg. & Rawle* 155, where a suit was

brought in *November* 1818, and one count in the declaration averred, that in consideration that the plaintiff, at the special instance, &c. of the defendants, agreed to suffer them to occupy certain premises for the term of *four* years, commencing in *August* 1816, and to board one of the defendants; that plaintiff did *suffer* them to occupy the same for the term of *four* years, and boarded one of the defendants, according to the term of the said agreement, and a general verdict was given for the plaintiff: it was held by this court, that though on demurrer it would have been bad, yet after verdict it would not be intended that the jury gave damages on account of the time laid in the declaration subsequent to the inception of the suit, and therefore was good.  So in the case of Yaldon *v.* Hubburb, *Com. Rep.* 231, the same principle is fully sustained, and held that it was impossible that the jury could be presumed to have given damages for the time charged in the declaration after bringing the suit.  But the case before us is clear of all difficulty on this score; for the jury, in express terms, by their verdict, have repelled all presumption of their having given damages for or on account of any part of the plaintiff's claim which became payable after the institution of the suit.  Their language is, " we find 1875 dollars 60 cents *due* to the plaintiff *at the institution* of the *suit.*"

None of the cases referred to by the defendant's counsel seem to meet or come up to the present one fully.  It appears to me, however, that the case of Bull *v.* Hopkins, 7 *Johns.* 22, decides the very principle involved in this.  There the defendant pleaded a former action and trial between him and the plaintiff, in which the plaintiff set off his demand against that of the defendant wherein he was then plaintiff; yet notwithstanding the plaintiff had actually brought forward the same demand, which he was then seeking to recover in the second action, and urged before the jury to have it set off in the former action against him by the defendant in the second, he was permitted to show that his demand was not then *actually* due and that the jury for that reason rejected it; and accordingly, upon showing this, he succeeded in his suit.  Now although the plaintiffs here sought to recover the same money in the former action which they sued for in this, yet as the defendant then resisted it upon the ground that it was not payable, as well as on other grounds, and obtained a direction from the court to the jury that they could not allow it to the plaintiff because it was not payable at the commencement of the suit, and the jury accordingly rejected it on that ground, it would be highly unjust to hold that the plaintiffs, by their recovery in that action of other moneys, were thereby barred from recovering, in the present action, that which was rejected there because it had not become payable before the institution of the suit.  I am also satisfied that there is no technical rule of law, making the recovery in the former action a bar to the present.  If the defendant had not objected to it on the ground that it was not payable when the suit was brought, and the jury had not disallowed it for that reason;

[Kane v. Fisher.]

then, upon that being shown, it would doubtless be otherwise. King *v.* Fuller, 3 *Caines's Rep.* 152.

The fourth reason is, that the jury were advised by the Chief Justice not to allow the defendant's claim for moneys and expenses disbursed and incurred by him in defending the land against the claim of the widow Kane, to be defalked from the plaintiff's claim. In this I can perceive no error. The claim of the widow Kane ultimately proved to be unlawful; and it is only lawful claims to the land sold by Kane to the defendant, that Kane or those standing in his shoes were bound to defend against: consequently the defendant had no right to call upon Kane, or those representing him, to defend against the claim, nor yet to be reimbursed out of Kane's estate, the costs and expenses to which he may have been put in defending against the widow Kane's claim.

The seventh reason is, that the plaintiffs not having shown, on the trial of the cause, by proper evidence, that they were the assignees of John Kane, duly appointed under the insolvent acts, that the Chief Justice ought, therefore, to have directed the jury that the plaintiffs were not entitled to recover, and could not sustain this action. It is a sufficient answer to this objection, that the pleadings have not put the fact, whether the plaintiffs are the assignees of John Kane or not, in issue; on the contrary, that they are such, appears, by the pleas of the defendant, to be admitted, and therefore it was unnecessary for the plaintiffs, on the trial of the cause, to give evidence of it.

The eighth reason is, that more than twenty years having elapsed from the time the money in question became payable, according to the terms of the contract, and the time of commencing this action for the recovery of it; that the jury ought to have presumed it paid, and that the Chief Justice ought to have advised them to that effect. Here it is necessary to observe that on the 28th of January 1829, the plaintiffs in the first suit filed a new declaration, embracing the money in question, and making a demand of it, which was at least two months before the twenty years had run; now although this demand was not made in such a way as to render it effectual, yet I consider it sufficient to prevent the presumption of payment from arising through mere lapse of time. Beside, if the claim in this case had not been made at all in the former suit, I would still consider the pendency of that suit, brought to recover prior instalments upon the same articles of agreement the payment of which was resisted by the defendant upon the ground that he had not received a good title clear of incumbrances for the property purchased by him under the articles, sufficient to repel the presumption of payment of the subsequent instalment not then payable, as long as the former suit remained pending and undetermined.

There is nothing in the ninth, and only remaining reason, which is, that the verdict is against law and the evidence given in the cause; for it appears to be in conformity to both.

The judgment is affirmed.