[Crim. No. 3140. Second Appellate District, Division Two.—February 16, 1939.]

THE PEOPLE, Respondent, v. WILLIAM BROOKS SISSON et al., Appellants.

Donald Kolts, Henry C. Huntington and Paul E. Tapley for Appellants.

U. S. Webb, Attorney-General, and Warner I. Praul, Deputy Attorney-General, for Respondent.

WOOD, J.—An information was filed charging the defendants Sisson, Tremelling, Sheehan, Meyers and Fidroeff with the crimes of grand theft and conspiracy to commit grand theft. In count I of the information it is charged that defendants are guilty of grand theft in the felonious taking of $300 from John Cloud; count II charges grand theft in the felonious taking of $300 from Edwin Nehls; count III charges grand theft in the felonious taking of $300 from Louis McAmis; count IV charges grand theft in the felonious taking of $250 from W. G. Schirmeister; count V charges grand theft in the felonious taking of $300 from Harry H. Loescher; count VI charges grand theft in the felonious taking of $250 from Charles Mercurio; count VII charges grand theft in the felonious taking of $400 from Granville Talbot. In count VIII it is charged that defendants and one Francis Turner are guilty of conspiracy to commit grand theft in that between October 5, 1937, and November 20, 1937, they feloniously conspired to commit grand theft. Fourteen separate overt acts are set forth in the information, of which seven overt acts consist of the various charges of grand theft set forth in the first seven counts of the information. The witness John Cloud, named in count I, was absent from the state at the time of trial and count I was dismissed. Defendants Sisson and Sheehan were found guilty on all the remaining counts. The motion of defendant Tremelling to dismiss counts VI and VII as to himself was granted and he was found guilty on counts II, III, IV, V and VIII. The motion of defendant Meyers to dismiss as to himself counts II, III, IV and V was granted and he was found guilty on counts VI, VII, and VIII. Motions for a new trial were made and denied. Appellants also presented prior to the judgment motions to "vacate the decision" and these motions were denied. Defendants Sheehan, Sisson and Tremelling have appealed from the judgment and from the order denying their motions for a new trial. Defendant Sisson attempts to appeal from the court's order denying his motion to set aside the decision and defendant Tremelling attempts to appeal from the court's order denying his application for probation and

from all orders and rules made during the course of the trial.

The case was tried before the court without a jury and it is the main contention of appellants that the evidence is insufficient to support the court's findings that they are guilty. In considering this contention we must look to the evidence presented by the prosecution since no evidence was presented on behalf of the defense.

Defendant Sisson held a license as a business opportunity broker and conducted a business under the fictitious name of Republic Finance Company at 1105 West Seventh Street, Los Angeles. His license was in the name of Phillip Smith and he was prosecuted under the name of Smith until late in the court proceedings when his true name was made to appear to be Sisson, at which time the court ordered its records to be amended to show the true name. Defendants Tremelling and Meyers were licensed to represent Sisson as salesmen under his broker's license. During the month of October, 1937, a series of advertisements were placed in Los Angeles newspapers in the business opportunity columns in which it was made to appear that truck drivers and garage men were wanted. The advertisements indicated that a modest investment would be required and that there would be incomes from the various positions ranging from $35 to $55 per week. These advertisements were obtained by the newspapers from both Sisson and Tremelling and were paid for by Sisson.

The complaining witnesses appeared at the office of Republic Finance Company on various dates from October 27, 1937, to November 8, 1937, and asked for jobs as assistant truck drivers. They talked to various ones of the defendants but for the most part the preliminary negotiations were conducted by defendants Tremelling and Meyers, the salesmen. The applicants were told that the jobs they sought had been taken by others or they were asked to advance sums beyond their means. Each was told that he could purchase a one-half interest in a chartered automobile run from Los Angeles to Newport Beach, the purpose of which was to carry passengers back and forth from Los Angeles to water taxis operating between Newport Beach and gambling ships off the coast. The applicants were to receive one dollar for each passenger hauled and on presentation of a ticket to a water taxi an-

other dollar would be paid for each passenger. The interest in the chartered run was to include a one-half interest in an automobile in addition to the profits to be derived. For the so-called one-half interest in the alleged chartered run and for a one-half interest in an automobile each applicant paid money to defendants, the sums varying from $250 to $400. In some instances the applicants secured the money by borrowing after considerable effort.

Defendant Sheehan was introduced to the applicants as the other owner in the chartered run to Newport Beach and in the automobiles. Sheehan had in October, 1937, purchased two used Lincoln automobiles. These automobiles, which with a Packard car were the ones involved in the deals with the applicants, had been purchased on the monthly payment plan and were ultimately repossessed upon failure to make the required monthly payments. In one instance a one-half interest in the same automobile was sold to three different applicants. Upon the consummation of the transactions the applicants were told to report for work the following day. They reported for work daily, some of them for at least two weeks, but there was no work. There was in fact no run from Los Angeles to Newport Beach. The applicants began to compare notes, with the result that efforts were made to recover the sums which they had paid. Defendant Fidroeff, who became a witness for the prosecution after the dismissal of the charges against him, negotiated with the applicants for the ostensible purpose of buying out their interests and returning their money. These negotiations were conducted at the instigation of defendant Sisson. Each applicant received a note signed by Fidroeff for $75 and another note signed by Sheehan for the balance of the amount he had paid. The written contracts were returned by all of the applicants except Mercurio. These contracts were burned by defendant Sisson. The notes were not paid.

The foregoing is a summary of the activities of the defendants. We deem it unnecessary to here set forth many other details, some of which are incriminatory. Without doubt the record discloses a nefarious scheme to mulct money from unemployed workmen in which all of the appealing defendants took part. It is not necessary that an illegal combination be proved by direct evidence. The elements of the crime may be inferred from facts and circumstances

shown in evidence. The prosecution need not prove that the defendants met and formally agreed to commit a crime or that the conspiracy was expressed in any particular manner. If it be established that the conspirators came to a mutual understanding to commit a crime it is sufficient to constitute conspiracy. (*People* v. *Yeager*, 194 Cal. 452 [229 Pac. 40].) The evidence is sufficient to justify the finding of the trial court that all of the appellants conspired together to commit grand theft. It is elementary that each conspirator is responsible for the acts of his coconspirators in furtherance of the objects of the conspiracy.

■ The record also supports the finding of the court that the appellants actually committed the crimes of grand theft set forth in the information. They falsely represented that there was in existence a chartered automobile run between Los Angeles and Newport Beach in the ownership of defendant Sheehan. It is argued by appellants that, according to the testimony of a representative of the railroad commission, such a run as was contemplated between the parties did not require a license or permit. Whether this be true or not is of little consequence, for the statements of appellants justify a finding that they represented that there was in existence a *bona fide* business of carrying passengers to Newport Beach when in fact no such business existed. The evidence is ample to justify findings that each of the defendants aided and abetted in the commission of all of the crimes of grand theft charged in the information.

■ Appellants refer to the rule controlling in cases of circumstantial evidence, that in such cases the evidence must not only be consistent with the hypothesis of guilt but inconsistent with any other rational hypothesis. This rule is elementary but it is a rule for the guidance of the jury and ordinarily the jury must determine in the light of the rule the question whether the defendants are guilty beyond a reasonable doubt. It is only in cases where the incriminatory circumstances are equally compatible with innocence as with guilt that the question presented becomes one of law. (*People* v. *Staples*, 149 Cal. 405 [86 Pac. 886].) In our case there was no jury and the rule governing the action of the jury is applicable to the trial court as a finder of fact. It cannot be successfully contended that the circumstances shown in evidence are equally compatible with the innocence of the

appellants as with their guilt and we therefore see no occasion for interfering with the findings of the trial court.

■ Complaint is made of the admission in evidence of the testimony of Fidroeff concerning his instructions from defendant Sisson in the matter of securing the return of the contracts and his testimony that defendant Sisson had admitted the burning of the contracts. It is contended that the conspiracy had then ended and that these acts and statements of defendant Sisson were inadmissible. To this respondent answers that the conspiracy was still in existence at the time of the conversation between Fidroeff and Sisson and refers to testimony that Sisson then told one of the applicants not to "run the boys away". It is argued that Sisson was attempting to avert any interference with his duping of additional applicants for employment. Regardless of this contention by respondent it is clear that the evidence was admissible as against defendant Sisson. The case was tried by the court and it will be presumed that the court considered the evidence for the purpose for which it was legally admissible. Moreover, it is apparent that appellants Sheehan and Tremelling were not prejudiced by this ruling and that the judgment of the court would not have been different if the evidence had been limited to defendant Sisson. The same observations may be made with respect to the claim of error on the part of the court in admitting promissory notes signed by defendant Sheehan. They were admissible as to Sheehan and Sisson, and the error, if any, could not have affected adversely the rights of Tremelling.

■ There is no merit in the contention that the judgments should be reversed for the reason that, as alleged, they are inconsistent. The alleged inconsistency is based upon the fact that defendant Meyers was convicted on two of the counts charging grand theft and that defendant Tremelling was convicted on four of the counts charging grand theft, being counts different from those upon which Meyers was convicted. It is sufficient answer to the contentions of appellants to point out that neither Tremelling nor Meyers was acquitted of any of the charges. Certain counts were dismissed as to them upon their own motions. Moreover, the charges in count VIII, the count charging conspiracy, do not necessarily include any of the elements upon which the court failed to convict either Meyers or Tremelling. Count VIII contains

allegations of fourteen distinct overt acts and it was not necessary for the prosecution to prove the commission of any particular one or of all of them.

The judgments and orders denying the motions for new trial are affirmed. The purported appeals from other orders are dismissed.

Crail, P. J., concurred.

McCOMB, J., Dissenting.—I dissent.

Defendants were accused by the district attorney of the county of Los Angeles of the crime of conspiracy to commit grand theft and, in seven separate counts, of having committed grand theft. They were tried jointly before the court without a jury, who found the defendants guilty as follows:

John Mossman Meyer—Counts VI, VII, and VIII.

Warren R. Sheehan } —Counts II, III, IV, V, VI, VII,
William Brooks Sisson } and VIII.

E. S. Tremelling—Counts II, III, IV, V, and VIII.

The information was dismissed as to defendant W. M. Fidroeff and the court granted defendants' motions to dismiss count I thereof.

Defendants Sheehan, Sisson, and Tremelling alone appeal from the judgments and orders denying their motions for a new trial.

Viewing the evidence most favorable to the prosecution, the facts in the instant case are:

During the month of October, 1937, defendant Sisson (also known as Smith), who was a business opportunity broker operating under the name of Republic Finance Company in Los Angeles, caused to be inserted in the Los Angeles Examiner an advertisement under the business opportunity column seeking assistant truck drivers, garage men, machinists and service station attendants. Each advertisement intimated that there would be incomes from the various positions ranging from $35 to $55 a week and stated that a moderate investment by each applicant would be required. Similar advertisements were inserted by defendants Tremelling and Meyer.

During the same month defendant Sisson contracted for the purchase of two Lincoln automobiles, one bearing engine num-

ber KB–1471 with B.E.P.C.S. plate No. 1951, the other, engine number KB–1000 with B.E.P.C.S. plate No. 1952.

In response to the aforementioned advertisements Mr. Nehls appeared at the office of Republic Finance Company, and on October 27, 1937 (count II), purchased from defendant Sheehan for $300 a one-half interest in the Lincoln car bearing engine number KB–1471 and also a one-half interest in a chartered run to Newport Beach.

October 28, 1937 (count III), defendant Sheehan sold to Mr. McAmis for $300 a one-half interest in the automobile bearing engine number KB–1000, and also a one-half interest in a chartered run to Newport Beach.

November 2, 1937 (count V), and November 13, 1937 (count VII), defendant Sheehan entered into contracts with Mr. Loescher and Mr. Talbot respectively similar to the contract he had previously made with Mr. Nehls, excepting that Mr. Loescher paid $300 for his contract and Mr. Talbot paid $400 for his agreement.

November 2, 1937 (count IV), defendant Sheehan sold to Mr. Schirmeister for $250 a one-half interest in a 1929 Packard automobile and also a one-half interest in a chartered run to Newport Beach.

November 8, 1937 (count VI), defendant Sheehan entered into a contract with Mr. Mercurio for the sum of $250 similar to the one he had previously entered into with Mr. McAmis.

In each instance after consummating the transactions above set forth the parties were told to report for work the next day. All reported but none were ever assigned any regular work. .

After several weeks the purchasers, excepting Mr. Mercurio, upon demanding their money back, received notes from defendants Fidroeff and Sheehan, in each instance aggregating the amount they had paid for their agreement, and returned their contracts to defendant Fidroeff, who in turn delivered them to defendant Sheehan, who destroyed them. The contract retained by Mr. Mercurio, and which was typical of all of the contracts executed by defendant Sheehan, read as follows:

"REPUBLIC FINANCE COMPANY
"1105 W. 7th Street,
"Los Angeles, California.

"PURCHASE AND SALES AGREEMENT.

"I hereby deposit with Republic Finance Company the sum of $50.00 as part payment of the purchase price of one-half interest in chartered sedan service business with only one sedan. Above includes one-half interest in 1932 Lincoln sedan. Profits are to be divided every 30 days. Located at 408 East 5th Street, in the City of Los Angeles, County of Los Angeles, State of California, owned by W. R. Sheehan and listed by said owner thereof with Republic Finance Company as agent for the sale, and I hereby agree to purchase said property or business upon the following terms and conditions, to-wit:

"The full purchase price of said property or business to be $450.00; the sum of $300.00 additional cash to be paid on or before 11–8–37, and the balance of $200.00 as follows: @ $5.00 every 7 days.

"Said sum of $50.00 deposited as above to be applied to the settlement of all damages sustained by reason of my failure to complete the purchase as outlined above, and Republic Finance Company may retain from said sum the amount of any commission or compensation which would be due it upon the sale of said property at above price under the terms of said owner's contract, as if it had made said sale to me at said price. The purchaser thereof hereby certifies that he has made his own investigation of the above business prior to making this purchase.

"Los Angeles, Calif. date 11–6–37.
"Purchaser    Charles Mercurio
"Address       1047 So. Irolo St.

"I hereby accept and ratify the sale mentioned in the foregoing agreement upon the terms and conditions therein mentioned.

"Los Angeles, Calif. date 11–6–37.
"Owner          W. R. Sheehan
"Home address."

Each defendant urges reversal of the judgments on the ground that *there is no substantial evidence to sustain the*

*findings of fact upon which the judgments were necessarily predicated.*

This proposition in my opinion is tenable except as to defendant Sheehan (count VII), and is governed by the following established principles of law:

First: (A) To constitute the offense of grand theft by means of false pretenses the following elements must be proved: (1) intent to defraud; (2) actual fraud committed; (3) false pretenses must be used for the purpose of perpetrating the fraud, and (4) the owner must have been induced to part with his property because of the false pretenses made use of for that purpose. (*People* v. *Wasservogle,* 77 Cal. 173, 175 [19 Pac. 270].)

(B) The false pretenses referred to in the third element mentioned above must be of a past event or existing fact, and a representation of a future event, whether in the form of a promise or an opinion, does not constitute a criminal, false pretense. (*People* v. *Downing,* 14 Cal. App. (2d) 392, 395 [58 Pac. (2d) 657].)

Second: One of the necessary elements to be proven to establish the offense of grand theft by trick and device is that there be evidence of a preconceived intent upon the part of the defendant to use the money which is obtained for a purpose different from that for which the person parting with it intended it to be used. (*People* v. *White,* 124 Cal. App. 548, 553 [12 Pac. (2d) 1078]; *People* v. *Robinson,* 107 Cal. App. 211, 221 [290 Pac. 470]; *People* v. *Solomon,* 75 Cal. App. 9, 14 [241 Pac. 931]; *People* v. *White,* 66 Cal. App. 703, 706 [226 Pac. 962].)

Third: One of the necessary elements of a conspiracy is that there be evidence from which the jury may reasonably infer an understanding, combination, or agreement between two or more persons to perpetrate an unlawful act. (*People* v. *Kizer,* 22 Cal. App. 10, 14 [133 Pac. 516, 134 Pac. 346].)

Fourth: Circumstantial evidence of guilt is not sufficient to sustain a conviction where the evidence relied upon is of such a character as to be as consistent with the hypothesis of innocence as that of guilt. (*People* v. *Lamson,* 1 Cal. (2d) 648, 662 [36 Pac. (2d) 361].)

Applying the foregoing rules to the instant case, we find the record with reference to defendants Sisson and Tremel-

ling, and to defendant Sheehan as to counts II, III, IV, V, and VI, to be completely devoid of any evidence that they or any of them made any false representation of a past or existing fact to the complaining witnesses, or any of them, which induced any of the complaining witnesses to part with their money when entering into the various contracts with defendant Sheehan. Therefore, one of the necessary elements to establish grand theft by means of false pretenses, to wit, that the complaining witness must have been induced to part with his money or property because of false pretenses made use of for that purpose, is absent, and there was no evidence to sustain a conviction against such defendants for having committed this crime.

As to the same defendants there is no evidence in the record that they intended to use the money which was obtained from the complaining witnesses for any purpose different from that for which the latter delivered it to them. Therefore, one of the necessary elements to establish the crime of grand theft by trick and device being absent, their conviction of this crime cannot be sustained.

Since every deduction from the circumstantial evidence was equally compatible with innocence as guilt, there was not substantial evidence to sustain the findings of fact upon which the conviction of these defendants of grand theft was necessarily predicated, the conviction of defendant Sisson on counts II, III, IV, V, VI, and VII and of defendant Tremelling on counts II, III, IV, and V should be reversed.

With reference to defendant Sheehan we find a different situation. An examination of the record shows that on November 13, 1937 (count VII), he sold to Mr. Talbot a one-half interest in an automobile bearing engine No. KB–1471, in which automobile he had previously sold a one-half interest to Mr. Nehls (count II) and also a one-half interest to Mr. Loescher (count V). It is, therefore, evident that as to defendant Sheehan's transaction with Mr. Talbot there is substantial evidence to sustain the implied finding of the trial court that all of the elements of the crime of grand theft by means of false pretenses were present.

With reference to count VIII of the information, charging the defendants with a conspiracy to commit the crime of grand theft, applying the rule that circumstantial evidence of guilt is not sufficient to sustain a conviction where the

evidence relied upon is of such a character as to be as consistent with the hypothesis of innocence as with that of guilt (*People* v. *Lamson, supra*) to the facts in the instant case, there is no evidence to sustain a finding of the trial court that there was an understanding, combination, or agreement between any two of the defendants to commit grand theft. Therefore, one of the essential elements of a conspiracy was lacking and the judgment of guilty as to these defendants on this count should be reversed.

For the foregoing reasons in my opinion the judgments and orders relative to defendants Sisson and Tremelling should be reversed and a new trial ordered. The judgments and orders relative to defendant Sheehan as to counts II, III, IV, V, VI, and VIII should be reversed and a new trial ordered as to such counts. The judgment and order denying defendant Sheehan's motion for a new trial as to count VII should be affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 3, 1939, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 17, 1939.