[Crim. No. 54. Fourth Appellate District.—September 24, 1931.]

THE PEOPLE, Respondent, v. MILES M. PAYNE, Appellant.

O. A. Jacobs and Ira Kroese for Appellant.

U. S. Webb, Attorney-General, and John L. Flynn, Deputy Attorney-General, for Respondent.

MARKS, J.—Appellant was accused by an information filed by the district attorney of Orange County, of the crime of grand theft. It was alleged that on or about the fourth day of September, 1930, he did wilfully, unlawfully and feloniously steal, take and carry away three 500-dollar "Straus" bonds of the value of $1500 in gold coin of the United States, the personal property of Mrs. Nellie F. Wagner. The case was tried before a jury, which returned a verdict finding appellant guilty as charged. From the judgment pronounced upon him, and from the court's order denying his motion for a new trial, he has taken this appeal.

The evidence discloses that Clifford F. Reid, Incorporated, was selling agent for lots in the Hollywood Riviera in Los Angeles County, California. It maintained a branch office in the city of Santa Ana, California, out of which appellant worked as a licensed salesman.

On September 4, 1930, appellant went to the home of Mrs. Wagner in the city of Anaheim, California, and discussed with her the purchase of a lot in the Hollywood Riviera. He took her to see the lot on the afternoon of this date and told her that she could make considerable money if she bought it at the purchase price of $3,650. She told him that she had nothing except three $500 bonds of the Straus Company to pay on the lot. He replied that the bonds would be accepted as a payment of $1500 on the purchase price and the two returned to Anaheim where appellant made out a contract of purchase and sale of the lot on the forms furnished him by his employer. These were signed by Mrs. Wagner and by appellant. The next morning appellant returned to Mrs. Wagner's home and they went to the bank and secured the bonds from her safety deposit box, which she delivered to him, he delivering one copy of the contract to her.

Appellant did not deliver the bonds nor their value to Clifford F. Reid, Incorporated, nor did he report the sale of the lot or turn over the contract to his employer, all of which the terms of his contract of employment required him to do. As Clifford F. Reid, Incorporated, had no knowledge of the purported sale of the lot to Mrs. Wagner, it was sold to another purchaser after September 5, 1930. The theft of the bonds was evidently discovered some time in December, 1930, as the treasurer of Clifford F. Reid, Incorporated, testified to a conversation he had with appellant shortly before Christmas of that year in which appellant admitted that he had neither delivered the bonds he had obtained from Mrs. Wagner, nor their value, into the company, nor had he reported the sale to it. He promised to obtain $1500 from his father, who was in Colorado, to replace the value of the bonds and deliver it to the treasurer of the company on the Wednesday before Christmas. This he did not do.

Upon this evidence the People rested their case. Appellant called Mrs. Wagner as his witness and offered to prove that some time subsequent to September 5, 1930, "there was a transaction between Mrs. Wagner and the defendant wherein this particular transaction as to the purchase of a lot was called off, and Mrs. Wagner allowed Mr. Payne to borrow the fifteen hundred dollars; that subsequent to that time Mrs. Wagner also made a further loan to Mr. Payne of two thousand dollars, and that the two loans are evidenced by this note of thirty-five hundred dollars which Mrs. Wagner accepted. That subsequent to the loan and in 1931 Mrs. Wagner accepted a check for five hundred dollars as payment on the thirty-five hundred dollar note. The second transaction being on November 28, 1930, wherein Mr. Payne borrowed two thousand dollars from Mrs. Wagner, as evidenced by a Straus bond for one thousand dollars and cash for one thousand dollars, and that through the transaction with Mrs. Wagner a note was then given to her for the thirty-five hundred dollars that was borrowed by Mr. Payne." The trial court sustained an objection of the People to this offer of evidence made on the part of appellant.

Appellant made a further offer of proof of a receipt dated November 28, 1930, signed by appellant, to Mrs.

Wagner for $2,000, being $1,000 in cash and a thousand-dollar Straus bond, No. 903, on the Aynesworth apartment building in Seattle, Washington. He made a further offer of proof of a promissory note in the principal sum of $3,500, dated December 17, 1930, due ninety days after date, with interest at seven per cent per annum, payable to Mrs. Nellie F. Wagner and signed by appellant, and a further offer of proof of a receipt dated April 17, 1931, for a cashier's check for $500 which appellant paid Mrs. Wagner on account of the principal sum of this note. Objections to this proffered testimony were sustained.

██ The sole question presented on this appeal is whether or not the court erred in sustaining the objections to the evidence offered by appellant and in excluding the proof under the offers made by him. In considering this question it should be observed that, without objection, appellant was permitted to elicit the following from Mrs. Wagner:

"Q. Subsequent to the time you testified you had a conversation with Mr. Payne when you were at the bank and he took the three bonds that have been referred to, did you have any other transaction with him regarding that $1500.00? A. No. Q. Did you have any further transaction with him regarding that $1500.00? A. No. Q. At any time? A. Not at all. Q. You never talked with him about it? A. No; only when he said he had sold the lot and there was $20.00 put up and asked me if I would like to sell it and I said I would, and he said there was $20.00 put up and if he didn't take it, I would get the $20.00, and that is all that was ever said. Q. Now, then, didn't he just a few days after you were at the bank there, come over and have a conversation with you regarding the purchase of this lot and this particular money? A. Absolutely not. Q. And he never had any further conversation with you at any time regarding this $1500.00? A. No."

██ It is said in 15 California Jurisprudence, 906: "A felonious intent to steal the property is an essential element of the offense of larceny. While the felonious intent of the party taking need not necessarily be an intention to convert the property to his own use, still it must in all cases be an intent wholly and permanently to deprive the owner

thereof.'' The question of intent is controlling in a prosecution for this offense. Intent may be and generally is evidenced by the surrounding circumstances and is a question to be determined by the jury under the evidence before it. In the instant case appellant's intent to steal the bonds is apparent when he failed to deliver them to his employer and to report the sale of the lot which he was required to do under the terms of his employment. Evidence of these circumstances, together with the fact of the misappropriation of the bonds, established a case of grand theft against him. A subsequent agreement between himself and Mrs. Wagner to rescind the sale and turn the transaction into a loan could not affect the crime already committed. The wrongdoer and the injured party, by themselves, are not permitted to thus relieve the criminal from the responsibility of his acts. There is nothing in the evidence to indicate that Mrs. Wagner knew of the theft of the bonds prior to the middle of December, 1930. Because appellant gave her a note for their value, together with $2,000 which he had otherwise obtained from her, was no defense to the charge against him of stealing her bonds and had no place in the evidence before the jury.

From the record before us the case was evidently tried upon the theory that the appellant stole personal property belonging to Mrs. Wagner, and not upon the theory that the theft was accomplished by fraudulently appropriating the bonds or by what was formerly denominated embezzlement. If, however, we should assume that the theft was accomplished by means of embezzlement, which assumption the evidence does not justify, still the provisions of sections 512 and 513 of the Penal Code do not require the introduction of the proffered evidence before the jury hearing the case under the circumstances disclosed by the record. (*People* v. *Harris,* 100 Cal. App. 78 [280 Pac. 178].)

The judgment and order appealed from are affirmed.

Barnard, P. J., and Jennings, J., concurred.